**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KIESHA D. LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-359 (RBW) |
| | ) |
| DANIEL WERFEL, IRS | ) |
| Commissioner,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Kiesha D. Lewis, proceeding pro se, brings this civil action against the

defendant, Daniel Werfel, in his official capacity as the Commissioner of the Internal Revenue

Service ("IRS"), alleging (1) a claim under 42 U.S.C. § 1983 for the violation of her right to

privacy under the Ninth Amendment, see Complaint for a Civil Case ("Compl.") at 6–12, ECF

No. 1, (2) the violation of her right to privacy under the Privacy Act of 1974, 5 U.S.C. § 552a,

see id., and (3) the intentional infliction of emotional distress, see id. at 12–13.  Currently

pending before the Court is the defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. 6,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon careful consideration of the parties'

submissions,[2] the Court concludes for the following reasons that it must grant the defendant's

motion.

---

[1] Daniel Werfel is the current Commissioner of the Internal Revenue Service, and he is therefore substituted for
Douglas O'Donnell as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the Memorandum of Law in Support of the United States' Motion to Dismiss Plaintiff's Complaint
("Def.'s Mem."), ECF No. 6-1; (2) the Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF
No. 9; and (3) the Reply in Support of the United States' Motion to Dismiss ("Def.'s Reply"), ECF No. 10.

# I.    BACKGROUND

## A.    Factual Background

The following allegations are taken from the plaintiff's Complaint, unless otherwise specified.  The plaintiff formerly worked at the IRS, see Compl. at 7, and as part of her employment, underwent a background investigation conducted by the Defense Counterintelligence and Security Agency ("DCSA"), see id., Exhibit ("Ex.") B (Privacy Act Request E-mail (Apr. 22, 2022)) at 1 (noting "that the Defense Counterintelligence and Security Agency (DCSA) . . . conducted [the plaintiff's background] investigation"), ECF No. 1-2. Starting in 2016, the plaintiff "filed several complaints against the [IRS] for behavior that [she] characterize[d] as unethical, immoral, and against the federal government and IRS policy."  Id. at 7.  Then, "[i]n October 2017, [the plaintiff's] employment with the IRS ended."  Id.  However, "[d]espite this fact, the IRS [allegedly] contacted the [DCSA] several times in 2018 . . . to request and obtain private, personal, and confidential information on [the plaintiff] without [her] knowledge or consent."  Id.  "In 2018, after receiving [the plaintiff's] background investigation file, the IRS [allegedly] performed a 'Suitability' adjudication on [her.]"[3]  Id. at 9.  "According to IRS policy, Suitability Investigations and Adjudications are only performed on IRS employees[,]" id., but the plaintiff "was not an IRS employee in 2018, [nor at that time] had

---

[3] The Defense Counterintelligence and Security Agency's website defines a suitability adjudication as "the evaluation of duly authorized personnel vetting information that is relevant and reliable, to determine whether a person who performs or seeks to perform work for, or on behalf of, the Executive Branch, not including the President, the Vice President, or their respective Employees except as provided by 3 [United States Code] or annual appropriations acts is: (1) suitable for government employment; (2) eligible for Logical and/or Physical Access; (3) eligible for Access to Classified Information; (4) eligible to hold a Sensitive Position; or (5) fit to perform work for or on behalf of the government as a Contractor Employee."  Adjudications, Defense Counterintelligence and Security Agency, https://www.dcsa mil/Personnel-Security/Adjudications.  The Court takes judicial notice of this information because it is available on the DCSA's public website.  See United States ex rel. Groat v. Boston Heart Diagnostics Corp., 255 F. Supp. 3d 13, 24 n.7 (D.D.C. 2017) (Walton, J.) ("[C]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." (quoting Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014))).

[she] been tentatively selected for an IRS position or appointed to a position at the IRS or at the Department of Treasury[,]" id. at 10.

In 2019, the IRS also allegedly "contact[ed] a third party, the National Student Clearinghouse (NSC)"—a "nonprofit and nongovernmental organization that provides education reporting, data exchange, verification, and research services"—"to verify [the plaintiff's] educational information." Id. at 11. "On February 11, 2019, IRS employee 'Donnie Robbins,' [allegedly] contacted [the] NSC to verify [the plaintiff's] education." Id. Despite the plaintiff's efforts to contact the IRS, "and sending various follow-up communications, [the IRS has allegedly] refused to provide an explanation as to why an IRS employee was conducting this type of verification on [the plaintiff]." Id.

Finally, the IRS also allegedly "collected and stored non-tax related data on [the plaintiff]." Id. at 12. More specifically, when the plaintiff submitted a Freedom of Information Act ("FOIA") request for her personnel security investigation file, she received "a total of 192 records[;]" however, according to the plaintiff, since her "IRS employment ended [in] October 2017," these records should not have existed. Id. Accordingly, the plaintiff alleges that:

> Since filing formal complaints in 2016, [she] believe[s] that [she], [her] family, and [her] friends have been the target of a consistent, coordinated, and ruthless digital assassination retaliation campaign. The goals of this campaign are to cause [the plaintiff] to lose [her] job (by calling into question [her] security adjudication), cause undue financial burden (by causing [her] to have an unwarranted tax debt, causing [her] checking account to be in the negative or arbitrarily making [her] credit score lower) and to punish anyone who [the IRS] believe[s] [may be] assisting [the plaintiff] in [her] fight against this behavior.

Id. In other words, the plaintiff "believe[s] that [she has] been the victim of federal government officials abusing their positions and/or authority to deprive [her] of [her] Ninth Amendment [r]ights and causing intentional infliction of emotional distress." Id. at 6.

**B.      Procedural Background**

The plaintiff filed her Complaint in this case on February 8, 2023.  See Compl. at 1.  On

April 11, 2023, the defendant filed his motion to dismiss.  See Def.'s Mot. at 1.  The plaintiff

filed her opposition on April 27, 2023, see Pl.'s Opp'n at 1, and the defendant filed his reply in

support of his motion on May 8, 2023, see Def.'s Reply at 1.

## II.      STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can

be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw [a] reasonable inference that the defendant is liable

for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the

complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012)

(internal quotation marks omitted).  While the Court must "assume the[] veracity" of any

"well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the

assumption of truth."  Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing

Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual

allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the

facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476.  Finally, the Court "may consider

only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In applying the above framework, the Court is mindful of the fact that the plaintiff is proceeding in this matter pro se.  This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion.  See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999).  However, just like parties represented by attorneys, a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]"  Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[The Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

### III.    ANALYSIS

The defendant argues that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because: (1) "[T]he Ninth Amendment does not convey the kind of substantive rights required to sustain a § 1983 claim[,]" Def.'s Mem. at 1; "(2) [the plaintiff's] Privacy Act claim fails because she has not alleged any 'adverse effect,' among other deficiencies[,]" id.; and (3) "[t]o the extent that [the p]laintiff alleges intentional infliction of emotional distress under the [Federal Tort Claims Act ('FTCA')]," the plaintiff has not "sought

relief at the administrative level as required" by the FTCA,  id. at 9.  Although the plaintiff does

not directly respond to the defendant's arguments, she alleges that "[t]here are cases in which the

federal government has held individuals and/or entities responsible and liable for privacy

invasions."  Pl.'s Opp'n at 2.  The Court will consider each of the defendant's arguments in turn.

A.      **Whether the Plaintiff Has Stated a Claim Under 42 U.S.C. § 1983**

        The Court first considers the defendant's challenge to the plaintiff's § 1983 claim that the

IRS has violated her right to privacy under the Ninth Amendment.  See Compl. at 6–12.  The

plaintiff claims that 42 U.S.C. § 1983 "gives citizens the right to seek civil action when a

government official deprives one of any rights, privileges, or immunities secured by the

Constitution."  Id. at 6.  And here, the plaintiff alleges that she has "been the victim of federal

government officials abusing their position and/or authority to deprive [her] of [her] Ninth

Amendment Rights[.]"  Id.  More specifically, the plaintiff claims that the IRS violated her

constitutional right to privacy when it allegedly "contacted the [DCSA] several times in 2018

and the [NSC] in 2019 to request and obtain private, personal, and confidential information on

[the plaintiff], without [her] knowledge or consent."  Id. at 7.  The defendant responds that

"[r]elief is not available [to the plaintiff] under § 1983" because "the Ninth Amendment does not

convey the kind of substantive rights required to sustain a § 1983 claim."  Def.'s Mem. at 1.

        "Section 1983 is not the source of substantive rights but rather 'a method for vindicating

federal rights elsewhere conferred.'"  Blackman v. District of Columbia, 456 F.3d 167, 177

(D.C. Cir. 2006) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  "In order to state a

claim for relief under 42 U.S.C. § 1983, [a] plaintiff[] 'must establish that [she] was deprived of

a right secured by the Constitution or laws of the United States, and that the alleged deprivation

was committed under color of state law.'" <u>Rynn v. Jaffe</u>, 457 F. Supp. 2d 22, 25–26 (D.D.C. 2006).

"The Ninth Amendment states that '[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.'" <u>Id.</u> at 26 (quoting U.S. Const. amend. IX).  Accordingly, "[a]s courts have consistently held, the Ninth Amendment is a rule of construction, not a substantive basis for a civil rights claim." <u>Id.</u>; <u>see also</u> <u>Wardlaw v. Pickett</u>, No. 89-cv-1557 (OG), 1990 WL 209835, at *4 (D.D.C. Dec. 5, 1990) ("As courts have frequently noted, the [N]inth [A]mendment 'has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim.'" (quoting <u>Standberg v. City of Helena</u>, 791 F.2d 744, 748 (9th Cir. 1986))).  Thus, the "plaintiff[] cannot cite the Ninth Amendment of the U.S. Constitution to support a § 1983 action." <u>Jaffe</u>, 457 F. Supp. 2d at 26.  And the plaintiff does not provide any other substantive bases for her § 1983 claim.  <u>See generally</u> Compl.  The Court must, therefore, dismiss the plaintiff's § 1983 claim.

**B.    Whether the Plaintiff Has Stated a Claim Under the Privacy Act**

The Court next addresses the defendant's challenge to the plaintiff's Privacy Act claim. <u>See</u> Compl. at 6–12.  The plaintiff alleges that "the IRS failed to follow establish protocols[,]" <u>id.</u> at 8, when it allegedly "obtain[ed] private, personal, and confidential information on [the plaintiff]," <u>id.</u> at 7, which constituted a violation of "the Privacy Act of 1974[,]" <u>id.</u> at 8.  More specifically, the plaintiff alleges that the defendant violated the Privacy Act when it "contacted the [DCSA] several times in 2018 and the [NSC] in 2019 to request and obtain private, personal, and confidential information on [the plaintiff], without [her] knowledge or consent." <u>Id.</u> at 7. The defendant claims that "two critical deficiencies in [the p]laintiff's Privacy Act claim are

apparent." Def.'s Mem. at 8. As a threshold matter, the defendant claims that the "[p]laintiff appears to have filed her Complaint after the statute of limitations had already elapsed." Id. Moreover, the defendant states that the "[p]lantiff has failed to allege the required elements of a claim for relief under the Privacy Act." Id. Because the Court ultimately concludes that the plaintiff has failed to state a claim for relief under the Privacy Act, the Court need not address whether the plaintiff's claim is barred by the applicable statute of limitations. See Bailey v. Fulwood, 780 F. Supp. 2d 20, 23 (D.D.C. 2011) ("[I]n this Circuit, 'the statute of limitations period set forth in 5 U.S.C. § 552a(g)(5) is not a jurisdictional bar.'" (quoting Kursar v. Transportation Sec. Admin., 751 F. Supp. 2d 154, 165 (D.D.C. 2010) (Walton, J.))).

"To state a claim under the Privacy Act, a plaintiff must establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of damages." Chichakli v. Tillerson, 882 F.3d 229, 233 (D.C. Cir. 2018). Here, the plaintiff fails to demonstrate that "the [alleged Privacy Act] violation had an 'adverse effect' on [her] in the form of damages." Id. At best, the plaintiff may be claiming that her emotional distress adversely affected her.[4] See Compl. at 8 ("[T]he IRS failed to follow established protocols resulting in what [the plaintiff] believes was a violation of [her] constitutional right to privacy and the Privacy Act of 1974 resulting in Intentional Infliction of Emotional Distress."). While "emotional trauma alone is sufficient to qualify as an 'adverse effect' under [the Privacy Act,]" Albright v. United States, 732 F.2d 181, 186 (D.C. Cir. 1984), a plaintiff is only entitled to recovery if the emotional trauma was "acute, tangible, and severe enough to give rise to actual damages[,]" Mulhern v. Gates, 525 F. Supp. 2d 174, 186 (D.D.C.

---

[4] Indeed, nowhere in the plaintiff's filings does she allege that the IRS's actions impacted her employment prospects or caused her any financial harm. See Pl.'s Opp'n at 5 ("[T]he IRS has been unsuccessful in its attempts to make me lose my job or my security adjudication."); see id. at 5–6 ("[T]he federal government has been unsuccessful in its attempts to make me lose my job or my security adjudication[.]").

2007); see also Rice v. United States, 245 F.R.D. 3, 6 (D.D.C. 2007) ("Proof of adverse effect

alone does not entitle plaintiffs to recovery under the Privacy Act without a further showing of

'actual damages.'" (quoting Doe v. Chao, 540 U.S. 614, 625 (2004))).  And here, aside from

conclusory statements that she suffered emotional distress, the plaintiff does not describe the

severity of her distress or any actual damages that resulted from it.  See generally Compl.

Accordingly, the plaintiff fails to satisfy the third element of a Privacy Act claim—viz., "the

[alleged] violation had an 'adverse effect' on [her] in the form of damages."  Chichakli, 882 F.3d

at 233; see also Chao, 540 U.S. at 620–25 (holding that emotional anguish alone is insufficient,

and that a plaintiff must show actual damages to recover under the Privacy Act).  Accordingly,

the Court concludes that it must dismiss the plaintiff's Privacy Act claim.[5]

## C.   Whether the Plaintiff Has Stated a Claim for Intentional Infliction of Emotional Distress Under the Federal Tort Claims Act

Finally, the Court considers the defendant's challenge to the plaintiff's intentional

infliction of emotional distress claim.  See Compl. at 12.  As previously noted, see supra Section

I.A, the plaintiff "believe[s] that [she] ha[s] been the victim of federal government officials

abusing their positions and/or authority to deprive [her] of [her] Ninth Amendment [r]ights and

---

[5] In her opposition, the plaintiff cites to five cases "in which the federal government [ ] held individuals and/or entities responsible and liable for privacy invasions." Pl.'s Opp'n at 2. However, none of the plaintiff's cited cases are applicable to the present matter. Four of the plaintiff's cited cases arose from enforcement actions brought by the Federal Trade Commission. See In the Matter of Lenovo Inc., 2017 WL 6885837 (F.T.C. Dec. 20, 2017); United States v. Vtech Elec. Ltd., et al., 2018 WL 317978 (N.D. Ill. Jan. 8, 2018); LabMD, Inc. v. Fed. Trade Comm'n, 894 F.3d 1221 (11th Cir. 2018); In re Facebook, Inc., Consumer Privacy User Profile Litigation, 402 F. Supp. 3d 767 (N.D. Cal. 2019).  More specifically, these cases involved FTC actions against private entities for violations of the Federal Trade Commission Act.  Here, the plaintiff's suit neither involves private entities nor violations of the Federal Trade Commission Act.  See generally Compl.  And the plaintiff provides no rationale for why suits brought by the FTC against private entities would be relevant to a matter involving the IRS's alleged acquisition or use of an employee's data.  The final case the plaintiff cites, Van Buren v. United States, 141 S. Ct. 1648 (2021), is similarly inapposite.  Van Buren involved the Computer Fraud and Abuse Act—viz., a statute that the plaintiff does not invoke in her Complaint.  Furthermore, the defendant in that criminal matter was a state police sergeant, see id. at 1652, not a federal employee or agency.  Accordingly, the Court is unpersuaded that the plaintiff's cited cases have any bearing on the resolution of this case.

causing <u>intentional infliction of emotional distress</u>." <u>Id.</u> at 6 (emphasis added).  More

specifically, the plaintiff alleges:

> Since filing formal complaints in 2016, [she] believe[s] that [she], [her] family,
> and [her] friends have been the target of a consistent, coordinated, and ruthless
> digital assassination retaliation campaign.  The goals of this campaign are to
> cause [the plaintiff] to lose [her] job (by calling into question [her] security
> adjudication), cause undue financial burden (by causing [her] to have an
> unwarranted tax debt, causing [her] checking account to be in the negative or
> arbitrarily making [her] credit score lower) and to punish anyone who [the IRS]
> believe[s] [may be] assisting [the plaintiff] in [her] fight against this behavior.

<u>Id.</u> at 12.  The defendant argues that "[t]o the extent that [the p]laintiff alleges intentional

infliction of emotional distress under the FTCA, . . . she has failed to state a claim upon which

relief can be granted."  Def.'s Mem. at 9.  More specifically, the defendant claims that "the

FTCA requires plaintiffs to exhaust all administrative remedies before filing suit in federal

district court."  <u>Id.</u>  And, the defendant alleges that the "[p]laintiff has not properly exhausted her

administrative remedies for her FTCA claim."  Def.'s Reply at 3 n.1.

"The exclusive remedy for torts committed by [g]overnment employees in the scope of

their employment is a suit against the [g]overnment itself under the Federal Tort Claims Act

('FTCA'), 28 U.S.C. §§ 1346(b), 2671–80.  In other words, the FTCA works as a limited waiver

of sovereign immunity, and claims for negligent and intentional infliction of emotional distress

against a federal agency can only be pursued via the FTCA."  <u>Wilson v. U.S. Dep't of Transp.</u>,

759 F. Supp. 2d 55, 64 (D.D.C. 2011) (internal citation omitted).  "Further, the FTCA bars

claimants from bringing suit until they have exhausted their administrative remedies, which

includes the requirement that claimants first bring their claims to the agency, and that the claims

have been denied by that agency."  <u>Id.</u>; 28 U.S.C. § 2675(a) ("An action shall not be instituted

upon a claim against the United States for money damages for injury or loss of property or

personal injury or death caused by the negligent or wrongful act or omission of any employee of

the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing[.]").  "To satisfy the FTCA's administrative-exhaustion requirements, a plaintiff must first present [her] claim in writing to the appropriate federal agency within two years of the claim's accrual." Yirenkyi v. U.S. Cent. Intel. Agency, 656 F. Supp. 3d 241, 248 (D.D.C. 2023).  "Such exhaustion 'is a requirement of the FTCA,' that the [District of Columbia] Court of Appeals has deemed to be jurisdictional." Emrit v. Nat'l Institutes of Health, 157 F. Supp. 3d 52, 55 (D.D.C. 2016) (internal citation omitted) (quoting Wilson v. Obama, 770 F. Supp. 2d 188, 191 (D.D.C. 2011)); see Simpkins v. District of Columbia Gov't, 108 F.3d 366, 371 (D.C. Cir. 2007).  Therefore, "FTCA claims may be dismissed for lack of subject matter jurisdiction where the plaintiff does not exhaust necessary administrative remedies under the FTCA, which is a mandatory prerequisite." Tsitrin v. Lettow, 888 F. Supp. 2d 88, 92 (D.D.C. 2012).

Although the plaintiff does not explicitly invoke the FTCA in her Complaint, see generally Compl., the Court will liberally construe her filings as raising an intentional infliction of emotional distress claim under the Federal Tort Claims Act.  See Harris v. Donahue, No. 11-cv-2030 (BAH), 2011 WL 6759603, at *1 (D.D.C. Nov. 16, 2011) ("The Court is mindful of [the] plaintiff's pro se status, and liberally construes her claim as one under the Federal Tort Claims Act [ ] against the United States of America."); Erickson, 551 U.S. at 94 ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers[.]'" (internal citation omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976))); cf. Niedermeier v. Off.

of Baucus, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (noting "the general judicial preference for

resolving [claims] on their merits rather than dismissing them on technicalities").

       However, the plaintiff has failed to demonstrate that she satisfied the FTCA's

administrative exhaustion requirements.  Although the plaintiff allegedly submitted a "Claim for

Damage, Injury, or Death" form to the IRS on June 25, 2022, see Pl.'s Opp'n at 35, the

information contained in that form is insufficient to satisfy the FTCA's exhaustion requirements.

Specifically, the plaintiff's form makes no reference to intentional infliction of emotional

distress.  See Pl.'s Opp'n at 35.  Instead, the plaintiff simply states that her "rights under the U.S.

Constitution, the Ninth Amendment – the right to privacy and the Privacy Act of 1974 were

violated."  Id.  However, the plaintiff's intentional infliction of distress claim—viz., a common

law tort—does not arise under the Ninth Amendment or the Privacy Act of 1974.  Cf. Hollis v.

Rosa Mexicano DC, LLC, 582 F. Supp. 2d 22, 26 (D.D.C. 2008) (noting the standard for "the

tort of intentional infliction of emotional distress" "[i]n the District of Columbia" (citing

Restatement (Second) of Torts § 46 (1965))).  Accordingly, the Court concludes that the plaintiff

has failed to "present[] [her intentional infliction of emotional distress] claim to the [IRS]" as

required by the FTCA.  28 U.S.C. § 2675; see Bembenista v. United States, 866 F.2d 493, 499

(D.C. Cir. 1989) (finding that plaintiffs failed to exhaust their medical malpractice claim, as their

administrative complaint only alleged assault); Edmonds v. United States, 436 F. Supp. 2d 28,

34–35 (D.D.C. 2006) (holding that "[b]ecause [the plaintiff] asserted claims of negligent

investigation for the first time in her Complaint filed in this Court, she failed to exhaust her

administrative remedies with regard to these [specific] claims" and "[t]hus, the Court lack[ed]

jurisdiction over these [specific] claims, and they must be dismissed").  Thus, the plaintiff's

FTCA claim must "be dismissed for lack of subject matter jurisdiction [as] the plaintiff d[id] not

exhaust [the] necessary administrative remedies under the FTCA, which is a mandatory prerequisite." Tsitrin, 888 F. Supp. 2d at 92.

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

**SO ORDERED** this 10th day of January, 2024.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.